**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIEGO RIVERA**, | **CIVIL ACTION** |
| Petitioner, | |
| *v.* | **NO. 20-3990-KSM** |
| **LAUREL HARRY, et al.**, | |
| Respondents. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                        **January 10, 2022**

Diego Rivera, who is serving a sentence of 30 to 60 years for third-degree murder, robbery, and other offenses, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his conviction.  (*See* Doc. No. 1.)  The Court referred the petition to Magistrate Judge Richard A. Lloret (Doc. No. 3), and on May 10, 2021, Magistrate Judge Lloret issued a Report and Recommendation ("R&R") that Rivera's Petition be denied (Doc. No. 11). Presently before the Court are the Petition (Doc. No. 1), Rivera's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 13), Rivera's Supplemental Objections to the Report and Recommendation of the Magistrate-Judge (Doc. No. 20), and Rivera's Second Supplemental Objections to the Commonwealth's First Response to Petitioner's First Set of Supplemental Objections to the Report and Recommendation of the Magistrate-Judge (Doc. No. 26).  For the reasons below, the Court declines to adopt the R&R on the ineffective assistance of counsel claims (Claims 1 and 2) and adopts the R&R on the claim that Rivera did not receive a full and fair state law post-conviction hearing (Claim 3).

I.       BACKGROUND

        A.      *Factual Background*

        When ruling on Rivera's direct appeal, the Pennsylvania Superior Court recounted the

following factual background:

> On September 1, 2012, Christopher Thompson ("Thompson") was "hanging out" on the corner of Rosehill and Somerset streets in Philadelphia selling drugs.  Thompson testified that he had been "working that corner" for a couple of months. Thompson was engaged in a drug transaction with a customer when appellant and an unidentified black man approached him. Thompson described appellant as Puerto Rican.  Appellant and his cohort began cursing at Thompson and telling him to "get the F off the block."  The black male punched Thompson while appellant hit him over the head with a semi-automatic handgun.  They took Thompson's money and drugs and told him to leave.  One of them told Thompson, "whoever you are working for, show them I did this to you."  "Show them I did this to you and tell them we are coming back in a couple hours."  Thompson described appellant as 5'8" to 5'9", in his early 20s with a short beard and a neck tattoo.

> Thompson returned to the area a few hours later.  Thompson was standing on the corner of Rosehill and Somerset, talking to a girl, when he saw appellant.   Appellant was walking toward Thompson, but then crossed the street and walked toward the Yadi Market on Somerset.  Shortly thereafter, Thompson heard gunshots and hid behind a car.  Thompson peeked through the car window and saw appellant firing shots.  Appellant then ran down Rosehill and jumped into a car.  After the shooting, Thompson observed the victim, Kareem Tomlin, lying on the ground with blood coming from his head.  Thompson gave a statement to police and picked out appellant as the shooter in a photo array.  Thompson also identified appellant at trial.

> Yahaira Polanco ("Polanco") testified that on September 1, 2012, she was walking up Somerset Street towards her mother's house when she heard gunshots.  The shots were coming from the direction of Yadi Market.   In a statement to police, Polanco identified appellant as the gunman and picked his photo out of a photo array.  Polanco told police that when the shooting started, she grabbed her kids and ran inside her mother's house.  Through her mother's door window, Polanco could see appellant firing

shots.  Afterwards, Polanco went outside and saw the victim lying on the ground bleeding from his head.  Polanco identified the victim as Kareem Tomlin, known as "Reem."

Police recovered video surveillance footage from two locations, Yadi Market and also a private residence on Rosehill Street.  The video captured appellant's altercation with Thompson as well as appellant running from the scene of the shooting and getting into a white car.  The incident with Thompson occurred at 11:21 a.m. on September 1, 2012, and the shooting outside the grocery store occurred at 4:07 p.m.  In addition, security cameras captured appellant leaving Coleman Hall, a halfway house, on September 1, 2012.  Appellant had a social pass to visit his mother from 10:00 a.m. to 6:00 p.m.  Appellant signed out at 9:47 a.m. and never came back. After he failed to return to the facility by 6:00 p.m. as scheduled and was declared an absconder, counselors discovered that appellant had cleaned out his room.  The shift supervisor spoke with appellant's stepfather who said he had not seen appellant that day.

On September 4, 2012, the fugitive task force was assigned to locate and apprehend appellant.  A wanted poster was issued with appellant's picture and information.  Detectives located appellant on September 9, 2012, but he fled through a bathroom skylight.  On September 11, 2012, appellant was apprehended at a different location.   During the ten days between the shooting and his apprehension, appellant had covered up the distinctive tattoo on his neck, "Who Wants Gunplay," with another tattoo.

The victim died of a single perforating gunshot wound to his head.  The bullet entered through the back of his head and exited out the front, causing extensive injuries to his brain.  The trajectory of the bullet was from back to front, right to left, and traveling slightly upward.  There was no soot or stipple, meaning that the gun was fired from beyond 2½ feet.  Police recovered seven fired cartridge cases, all fired from the same .9 millimeter firearm.  Police also recovered two bullets, which were fired from the same .9 millimeter firearm.  Police did not find the actual firearm that was used.

*Commonwealth v. Rivera*, No. 1963 EDA 2014, 2016 WL 5844454, at *1–2 (Pa. Super. Ct. Oct.

5, 2016) ("*Rivera I*") (internal citations omitted).

Rivera was charged under two separate docket numbers:  one for the assault and battery

and the other for the murder.  (Doc. No. 11 at 4 n.2.)

  **B.**  ***Procedural History***

  On March 13, 2014, following a three-day jury trial in the Philadelphia Court of Common Pleas, Rivera was found guilty of third-degree murder, robbery, aggravated assault, criminal conspiracy, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime.  (Doc. No. 11 at 4.)  On June 13, 2014, the trial court imposed an aggregate sentence of 30 to 60 years' incarceration.  (*Id.*)  On June 25, 2014, Rivera filed a post-sentence motion, which was denied two days later.  (*Id.*)  Rivera appealed, and the Pennsylvania Superior Court determined that the issues Rivera raised on appeal were meritless and affirmed his sentence.  *See Rivera I.*  Rivera did not seek discretionary review from the Pennsylvania Supreme Court, so his judgment of sentence became final on November 4, 2016.  (Doc. No. 11 at 4.)

  On August 31, 2017, Rivera timely filed a petition for post-conviction collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA").  (*Id.* at 5.)  The PCRA court dismissed Rivera's PCRA petition on August 21, 2018.  (*Id.*)  Rivera appealed on September 19, 2018, but he only filed one notice of appeal, even though his convictions were on two separate dockets.  (*Id.*)  Because he failed to file two notices of appeal (one for each docket), on March 10, 2020, the Superior Court quashed the appeal pursuant to *Commonwealth v. Walker*, 185 A.2d 969 (Pa. 2018).  *See Commonwealth v. Rivera*, No. 2784 EDA 2018, 2020 WL 1158711, at *2 (Pa. Super. Ct. Mar. 10, 2020) ("*Rivera II*").

  On July 11, 2020, Rivera, proceeding pro se, filed the Petition presently before the court.  (Doc. No. 1).  Rivera seeks a new trial on three grounds:  (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) failure to receive a full and fair

PCRA hearing.  (*Id.* at 4.)  The Court referred this matter to Magistrate Judge Lloret for an R&R on August 25, 2020 (Doc. No. 3), and Magistrate Judge Lloret issued the R&R on May 10, 2021 (Doc. No. 11).

Rivera, still proceeding pro se, objected to the R&R on May 26, 2020.  (Doc. No. 13.) On July 30, 2021, Rivera retained counsel (Doc. No. 16) and moved for leave to file supplemental objections to the R&R (Doc. No. 17).  The Court granted his motion (Doc. No. 18), and Rivera filed supplemental objections to the R&R on August 13, 2021 (Doc. No. 20).  On November 1, 2021, the Commonwealth responded to Rivera's supplemental objections, (Doc. No. 24), and on November 9, 2021, Rivera objected to the Commonwealth's response (Doc. No. 26).

### C.     *Report and Recommendation*

Magistrate Judge Lloret recommended that Rivera's claims be dismissed with prejudice because his claims were untimely, procedurally defaulted, and not cognizable on habeas review. (Doc. No. 11.)

First, Magistrate Judge Lloret concluded that Rivera's claims were time barred.  (*Id.* at 7–10.)  Rivera's judgment became final on November 4, 2016, so he had 365 days from that date to file a habeas petition.  (*Id.* at 7.)  Three hundred days after his judgment was final, Rivera filed the PCRA petition in Pennsylvania state court, and the statute of limitations was tolled pending the resolution of that matter.  (*Id.*)  The PCRA proceedings were finalized and the statute of limitations began running again on April 9, 2020.  (*Id.* at 8.)  From then, Rivera had 65 days to file a habeas petition, but he did not do so until July 11, 2020—after the limitations period had expired.  (*Id.*)  Magistrate Judge Lloret also concluded that Rivera was not entitled to equitable tolling because Rivera "is unable to demonstrate due diligence or extraordinary circumstances."

(*Id.* at 9.)

Next, Magistrate Judge Lloret found that even if Rivera's claims for ineffective assistance of counsel were not time barred, they still failed because Rivera did not present the merits of his claims in state court.  (*Id.* at 10–14.)  Magistrate Judge Lloret explained that petitioners attacking a state law judgment must exhaust state law remedies, which requires that they "fairly present[]" those claims to state courts through the state-specific collateral review process and "one complete round of the established appellate review process." (*Id.* at 10.)  "If a petitioner fairly presents a claim to the state courts, but it was denied on a state-law ground that is 'independent of the federal question and adequate to support the judgment,' the claim is procedurally defaulted." (*Id.*)  Magistrate Judge Lloret found that Rivera's claims were procedurally defaulted because his PCRA appeal was quashed on procedural grounds (Rivera failed to file two notices of appeal, even though he was challenging judgments entered on two separate dockets).  (*Id.* at 12–13.)  He also concluded that no exceptions applied to save Rivera's claims from the default because his "claim[s] raise[] a variety of bare allegations about the adequacy of trial counsel's representation without alleging any specific facts." (*Id.* at 13–14.)

Finally, Magistrate Judge Lloret determined that Rivera's claim that his PCRA hearing was not full and fair failed because it was not cognizable on habeas review.  (*Id.* at 15.)  Magistrate Judge Lloret explained that federal courts can only review the claims of state prisoners "on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." (*Id.* (citing 28 U.S.C. § 2254(a)).)  Because Rivera's claim attacking his PCRA hearing did not assert a violation of any federal right, Magistrate Judge Lloret concluded that it was not cognizable on habeas review.  (*Id.*)

For these reasons, Magistrate Judge Lloret recommended that the Petition be dismissed

with prejudice and that no certificate of appealability issue.  (*Id.* at 16.)

      **D.**    ***Objections***

      Rivera filed several objections, some proceeding pro se, and some with the assistance of counsel.  (*See* Doc. Nos. 13 & 20.)

      Shortly after Magistrate Judge Lloret issued his R&R, Rivera, proceeding pro se, filed four objections.  (Doc. No. 13.)  First, Rivera objects to the finding that the Petition was untimely and not entitled to equitable tolling because "extraordinary circumstances" prevented him from timely filing a petition.  (Doc. No. 13 at 1.)  The PCRA judgment was made final in April 2020, at the height of the COVID-19 pandemic.  (*Id.*)  At that time, in an effort to curb the spread of COVID-19, the prison closed the law library and required inmates to spend 23 hours and 45 minutes per day in their cells, which prevented Rivera from filing his petition. (*Id.*)  But Rivera exercised "due diligence" and filed the Petition as soon as practicable after the COVID-19-related restrictions were lifted, so he argued that the statute of limitations should have been equitably tolled.  (*Id.*)

      Second, Rivera objects to the finding that the ineffective assistance of counsel claims were procedurally defective because "[t]he state court 'misled' Rivera during his appellate process of "ultilizing [sic] the singular in advising Rivera where and how to file said notice of appeal."  (*Id.* at 2.)  Third, Rivera objects to the finding that his ineffective assistance of counsel claims "raise[] a variety of bare allegations . . . without alleging any specific facts," arguing that his Memorandum of Law "set forth specifically how (a) counsel failed to investigate the video tape . . . , (b) how counsel failed to file a servance [sic] motion . . . , [and] (c) how counsel failed to object during opening and closing arguments.  (*Id.* at 3.)  Finally, Rivera objects to the conclusion that his claim attacking the PCRA hearing was not cognizable on habeas review,

arguing that this claim alleged "a Fourteenth Amendment Due Process right violation." (*Id.* at 3–4.)

Rivera later retained counsel, and the Court granted him leave to file supplemental objections. (Doc. No. 18.) Rivera objects to the conclusion that the Petition was untimely for the reasons he explained in his initial objections and because Magistrate Judge Lloret did not receive (and so he could not consider) a letter that had been sent to the inmate population, including Rivera, from the Acting Chief Counsel of the Pennsylvania Department of Corrections informing them, "[N]early all courts have been granting stays of at least thirty days. If you have civil case deadlines and cannot meet those deadlines because of this situation, then your cases will not be dismissed and late filings will not be rejected." (*Id.* at 4.) Rivera argues that he "had an unqualified right to rely on the letter," which further supports his argument that the statute of limitations should have been equitably tolled. (*Id.*)

Rivera also objects to the conclusion that the procedural default in the PCRA proceeding was insufficient to bar habeas relief. (*Id.* at 5.) He contends that the procedural rule that required him to file two notices of appeal (and required the Superior Court to quash his appeal for failing to do so) should not bar habeas relief because it was not regularly and consistently applied and he did not have notice of the rule. (*Id.* at 5–6.) Rivera also argues that, even if the ineffective assistance of counsel claims were procedurally defaulted, such default is excusable because his claims have "some merit" and he alleged specific facts in support of those claims. (*Id.* at 7.)

The Commonwealth responded, agreeing that the statute of limitations should have been equitably tolled given the COVID-19-related restrictions that prevented Rivera from timely filing the Petition. (Doc. No 24 at 2–3.) The Commonwealth also agreed that the R&R incorrectly

found that Rivera failed to provide specific facts supporting his ineffective assistance of counsel claims. (*Id.* at 3.) Nevertheless, the Commonwealth argued that Rivera's claims fail because of the procedural default. (*Id.* at 3-4.)

## II.   STANDARD OF REVIEW

Where a party objects to a magistrate judge's proposed findings and recommendations, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *see also United States v. Raddatz*, 447 U.S. 667, 680 (1980) (explaining that district court judges have "broad discretion to accept, reject, or modify the magistrate's proposed findings").

## III.   ANALYSIS

Magistrate Judge Lloret recommended denying the Petition because Rivera's claims were untimely, procedurally defaulted, and not cognizable on habeas review. (Doc. No. 11.) The Court considers each ground for Magistrate Judge Lloret's recommendation in turn.

### A.   *The Petition Was Timely*

Magistrate Judge Lloret concluded that the Petition was untimely because it was not filed within 365 days of Rivera's sentence becoming final, even taking into account statutory tolling. (*Id.* at 7–8.) Magistrate Judge Lloret also concluded that Rivera was not entitled to equitable tolling. (*Id.* at 8–9.) Rivera objects, arguing that he was entitled to equitable tolling because he was unable to timely file the Petition due to the prison's safeguards against the COVID-19 pandemic and the letter from the Acting Chief Counsel alerting him and other inmates that courts had been staying civil matters. (Doc. No. 20 at 2–3.) The Commonwealth agrees "that the

9

unexpected hurdles caused by the pandemic can be an 'extraordinary circumstance' justifying equitable tolling."  (Doc. No. 24 at 2.)

Courts may equitably toll the habeas statute of limitations where the petitioner shows that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Holland v. Florida*, 560 U.S. 631, 648–49 (2010).

The Court finds that equitable tolling is appropriate in this case.  Rivera had to file the Petition within 65 days of April 9, 2020, when the PCRA hearing was final.[1]  However, due to the COVID-19 pandemic, Rivera was quarantined in his cell for 23 hours and 45 minutes per day from March 2020 through July 2020 and the prison's law library was closed, so he was not able to timely file the Petition.  (Doc. No. 13 at 1–2.)  The prison's safeguards against the COVID-19 pandemic prevented Rivera from timely filing the Petition, and Rivera diligently pursued his rights by filing the Petition on July 11, 2020, almost immediately after the prison lifted the quarantine and reopened the law library.  *See Cowan v. Davis*, Case No. 1:19-cv-00745-DAD, 2020 WL 4698968, at *6 (E.D. Cal. Aug. 13, 2020) ("[T]he court concludes petitioner has shown that notwithstanding the continuing exercise of clearly reasonable diligence, the COVID-19 pandemic makes it unlikely and very well impossible that a complete federal habeas petition in this case can be [timely] completed."); *accord Washington o/b/o N.J.W. v. Kijakazi*, Civil Action No. 2:20-CV-00908-CLS, 2021 WL 3676972, at *2 (N.D. Ala. Aug. 19, 2021) ("Several courts have considered whether the COVID-19 pandemic is an extraordinary circumstance that

---

[1] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), petitioners have 365 days from the date their judgment of sentence is final to file a petition.  *See* 28 U.S.C. § 2244(d)(2).  Rivera's sentence became final on November 4, 2016, and he filed his PCRA petition 300 days later, on August 31, 2017.  (Doc. No. 11 at 7.)  The limitations period was statutorily tolled from the date the PCRA petition was filed until the state court's judgment on the petition was made final.  *See* 28 U.S.C. § 2244(d)(2).  The PCRA hearing was finalized on April 9, 2020, so he had to file the Petition by June 15, 2020.

provides justification for untimely filing, and each have held that an individual must show that he was diligently pursuing his rights, and how, specifically, the pandemic prevented him from timely filing.") (collecting cases).  *Contra Harding v. Warden Mason of SCI Manhanoy,* Case No. 5:21-cv-02393-JDW, 2021 WL 5177711, at *3 (E.D. Pa. Nov. 8, 2021) (declining to apply equitable tolling where the habeas petition was untimely, purportedly because the prison law library was closed due to the COVID-19 pandemic, because the petitioner "fail[ed] to explain why he did not file his habeas petition until . . . *many months* after the law library reopened" (emphasis added)).

Because the parties and the Court agree that equitable tolling is appropriate in this case, we decline to adopt Magistrate Judge Lloret's R&R regarding the Petition's timeliness.

### B.    The Ineffective Assistance of Counsel Claims Were Procedurally Defaulted, but the Procedural Default Does Not Bar Habeas Review

Magistrate Judge Lloret concluded that Rivera's ineffective assistance of counsel claims (Claims 1 and 2) were procedurally defaulted on the PCRA review, so those claims were not entitled to habeas review.  (Doc. No. 11 at 10.)  Rivera objects, arguing that these claims were not defaulted, and that, even if they were, an exception applies.  (Doc. No. 20 at 5–7.)

Under AEDPA, a state law prisoner seeking habeas review must have "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  To properly exhaust state court remedies, a petitioner must "fairly present[] his [federal] claims to the state court" and seek at least one level of appellate review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the state courts."  *Nara v. Frank*, 488 F.3d 188, 197–98 (3d Cir. 2007) (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995)).  A petitioner's claim is "procedurally defaulted"

where the state court denies the claim on a state law ground that is "independent of the federal

question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729

(1991).

Procedural default typically acts as a bar to habeas relief; however, "[a] state procedural

rule is not an adequate bar unless it is 'firmly established and regularly followed.'"  *Wilson v.

Beard*, 589 F.3d 651, 658 (3d Cir. 2009) (quoting *Bronshstein v. Horn*, 404 F.3d 700, 707 (3d

Cir. 2005)).  A rule is "firmly established and regularly followed" where the state courts

faithfully apply it "in the vast majority of cases."  *Campbell v. Burriss*, 515 F.3d 172, 180 (3d

Cir. 2008).  "Whether such a rule is 'firmly established and regularly followed' is determined as

of the date the default occurred."  *Id.* (citing *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007)).

In addition to the requirement that they be "firmly established and regularly followed,"

procedural rules will only bar habeas review where they serve "a legitimate state interest."

*Henry v. Mississippi*, 379 U.S. 443, 447 (1965).

Here, the Superior Court quashed Rivera's appeal of the PCRA hearing because he only

filed one notice of appeal even though his PCRA claims arose out of convictions entered on two

separate dockets.  *See Rivera II*, 2020 WL 1158711, at *1–2.  In *Commonwealth v. Walker*, 185

A.3d 969, 977 (Pa. 2018), the Pennsylvania Supreme Court explained that the Pennsylvania

Rules of Appellate Procedure require appealing parties "to file separate appeals from an order

that resolves issues arising on more than one docket" and held that "[t]he failure to do so requires

the appellate court to quash the appeal."  The rule set forth in *Walker* applies to all appeals filed

after June 1, 2018. *Id.*  Rivera filed his appeal on September 19, 2018.  *Rivera II*, 2020 WL

1158711 at *2.  Accordingly, Rivera's failure to file two notices of appeal means that his claims

are procedurally defaulted.

12

Rivera argues that his failure to follow the *Walker* rule is not an "independent and adequate ground" to bar habeas review because the rule serves no legitimate governmental purpose and is not consistently applied.  (Doc. No. 20 at 5–6.)  First, Rivera argues that the *Walker* rule "serves no legitimate governmental purpose except perhaps to dramatically increase the cost of filing an appeal, by churning filing fees."  (*Id.* at 6.)  But in its opinion setting forth the rule, the Pennsylvania Supreme Court articulated the purpose of the *Walker* rule:

> [The] practice [of filing a single notice of appeal for multiple cases] utilized in this circumstance by the Commonwealth will often result in unintended consequences, as the appellate court, in deciding the single appeal, must "go behind" the notice of appeal to determine if the same facts and issues apply to all of the appellees. As the Superior Court in this case observed, the suppression order at issue here may affect one or more of the [a]ppellees differently from the rest, including, for example, the remaining evidence (if any) against each [a]ppellee that may be used at trial (which, in turn, may implicate whether all or some of the [a]ppellees should be tried in a single joint trial). The legal issues relating to suppression, *e.g.*, the standing of each defendant to challenge the search and seizure, may also differ from one [a]ppellee to the next.

*See Walker*, 185 A.3d at 977.  In short, the Pennsylvania Supreme Court adopted the *Walker* rule in an attempt to streamline the appellate process—this is unquestionably a legitimate governmental purpose.  *See Bailey v. Snyder*, Civ. A. No. 96-85-SLR, 1996 WL 434932, at *5 (D. Del. July 31, 1996) (finding that a procedural rule intended to limit untimely claims to promote judicial efficiency furthered a legitimate state purpose).

Next, Rivera argues that the *Walker* rule is "not applied regularly and consistently." (Doc. No. 20 at 6.)  We agree.  A state procedural rule cannot bar habeas review unless it is "regularly followed."  *Wilson*, 589 F.3d at 658.  *Walker* was decided in June 2018, just three months before Rivera filed his notice of appeal, and shortly after *Walker* was decided, the Supreme Court declined to apply the rule in at least one case with similar facts to those here.  *See*

*Always Busy Consulting, LLC v. Babford & Co.*, 247 A.3d 1033, 1043 (Pa. Super. Ct. 2021) (declining to apply the *Walker* rule where the appellant only filed one notice of appeal but the two dockets involved the same parties and the same claims).

Moreover, the Superior Court has declined to apply the *Walker* rule in the PCRA context where the court or an agent thereof makes misstatements regarding the "manner that [the appellant] could effectuate an appeal from the PCRA court's order." *Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa. Super. Ct. 2019). For instance, in *Commonwealth v. Stansbury*, the PCRA court notified the appellant "that he could pursue appellate review by filing a *single notice of appeal*." *Id.* (emphasis added). The Superior Court determined that this misstatement of the law misled the appellant and chose to "overlook the defective nature of [the appellant's] timely notice of appeal rather than quash pursuant to *Walker*." The Superior Court has applied this exception to the *Walker* rule dozens of times in the brief period since *Stansbury* was decided. *See, e.g.*, *Commonwealth v. Burgos*, 262 A.3d 553, *4 (Pa. Super. Ct. 2021); *Commonwealth v. Evans*, 260 A.3d 136, *3 (Pa. Super. Ct. 2021); *Commonwealth v. Robinson*, 256 A.3d 20, *5 (Pa. Super. Ct. 2021); *Commonwealth v. Vinson*, 249 A.3d 1197, 1203 (Pa. Super. Ct. 2021); *Commonwealth v. Van Reese*, 242 A.3d 405, *3 (Pa. Super. Ct. 2020); *Commonwealth v. Larkin*, 235 A.3d 350, 354 (Pa. Super. Ct. 2020).

That is exactly what happened when Rivera attempted to appeal the PCRA decision in his cases: Rivera was informed that he needed to file a single "notice of appeal." (Doc. No. 13 at 2). But when he did just that (i.e., filed one *notice* of appeal), the Superior Court strictly followed the letter of *Walker* and was "constrained to quash the appeal," *Rivera* II, 2020 WL 1158711, at *1, even though the same court took the opposite approach in dozens of other cases. This alone underscores the inconsistent application of the *Walker* rule.

14

And finally, only about three years after the Supreme Court implemented the *Walker* rule, *they overturned it.  See Commonwealth v. Young*, --- A.3d ---, No. 19 MAP 2021, No. 20 MAP 2021, 2021 WL 6062566, at *9 (Pa. Dec. 22, 2021) ("We realize permitting parties to rectify non-jurisdictional procedural missteps relating to notices of appeal will, for all practical purposes, largely blunt the bright-line rule the *Walker* Court sought to impose . . . Rule [of Appellate Procedure] 341 requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket; but, where a timely appeal is erroneously filed at only one docket, Rule [of Appellate Procedure] 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate.")

Given the inconsistent application and short shelf-life of the *Walker* rule, the Court finds that it was not "firmly established and regularly followed" at the time of the default.  *See Banks v. Horn*, 126 F.3d 206 (3d Cir. 1997) (holding that a Pennsylvania procedural rule that courts would not hear issues raised for the first time on collateral review was not "firmly established and regularly followed" because courts "relaxed" the rule in several cases); *Miller v. Beard*, 214 F. Supp. 3d 304, 321 (E.D. Pa. 2016) (holding that a Pennsylvania procedural rule did not bar habeas review where it was not consistently applied); *Baker v. Horn*, 210 F. Supp. 3d 592, 637–38 (E.D. Pa. 2002) (same).  Accordingly, the procedural default does not bar habeas review of Rivera's convictions, and the Court declines to adopt the R&R as to Rivera's ineffective assistance of counsel claims (Claims 1 and 2).

### C.    The Claim Attacking the PCRA Hearing Is Not Cognizable on Habeas Review

Finally, Magistrate Judge Lloret found that Rivera's claim that the PCRA hearing was not "full and fair" was not cognizable on habeas review because it "does not assert a violation of any federal right."  (Doc. No. 11 at 15.)  Rivera objected, arguing that he had asserted a claim that his

Fourteenth Amendment due process rights had been violated. (Doc. No. 13 at 3–4.)

AEDPA permits federal courts to provide collateral relief where a petitioner is in state or federal custody for a sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254. "Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). Put differently, "habeas proceedings are not the appropriate forum for [petitioners] to pursue claims of error at the PCRA proceeding." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also McFadden v. Beard*, No. 09–5952, 2011 WL 1361448, at *8 (E.D. Pa. Mar. 1, 2011) ("What occurred in a petitioner's collateral proceeding does not enter into the habeas calculation as it is the original trial that is the main event for habeas purposes.").

Here, even though Rivera casts this claim as a "Fourteenth Amendment Due Process right violation," he is asking the court to impermissibly review what happened during the PCRA hearing, so this claim must be dismissed. *See Lambert*, 387 F.3d at 259 ("Of course, labeling a claim as a 'fundamental due process violation' does not actually substantiate a constitutional claim. Lambert fails to explain how conduct at the PCRA hearing could feasibly warrant habeas relief."); *Copeland v. Wingard*, CIVIL ACTION NO. 14–5754, 2015 WL 6688073, at *9 (E.D. Pa. Sept. 21, 2015) (dismissing a habeas petition alleging that the PCRA court's error denied the petitioner due process because such claims are "not cognizable on habeas review"). The Court adopts the R&R as it relates to Claim 3.

**IV.    CONCLUSION**

For the reasons above, the Court declines to adopt the R&R on the ineffective assistance of counsel claims (Claims 1 and 2) and adopts the R&R on the claim that Rivera did not receive a full and fair PCRA hearing (Claim 3).  An appropriate Order follows.